UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| vs. ) | NO. 2:14-CR-113 |
| ) | NO. 2:16-CV-147 |
| ADAM SCOTT MITCHELL, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

This matter is before the Court pursuant to 28 U.S.C. § 636 and by Order of Reference filed by the District Court referring the matter for an evidentiary hearing [Doc. 54]. The matter has been fully briefed, and an evidentiary hearing was held on January 17, 2017.

Defendant Adam Scott Mitchell ("Mitchell") filed a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 [Doc. 48], raising various issues of ineffective assistance of counsel and challenges to his sentence. [Doc. 48, pg. 4-10]. The sole issue before the undersigned is whether Mitchell instructed his trial counsel to appeal the sentence [*Id.* at 5]. The District Court referred the matter to the undersigned for an evidentiary hearing.

I. **FACTUAL FINDINGS**

On October 15, 2014, the Grand Jury returned a three count indictment, charging Mitchell with the production of child pornography in violation of 18 U.S.C. § 2251(a), possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B), and failure to register as a sex offender in violation of 18 U.S.C. § 2250(a) and 42 U.S.C. §§ 16911 and 16913. [Doc. 6, *Indictment*]. On December 11, 2014, Mitchell filed a "*Pro Se* Motion to enter plea" in which he advised the Court that "I have reviewed ever fact of my case [] in my best interest to move alone with signing the PLEA…I had already made the decision to plead guilty before the motion to continue was placed

1

without my knowledge or approval." [Doc. 17]. On January 14, 2015, Mitchell entered a Plea Agreement with the United States, agreeing to plead guilty to production of child pornography in return for the United States dismissing the remaining counts [Doc. 20]. Mitchell stipulated to the following in support of his plea:

> a. On June 9, 2014, the defendant was released from the Virginia Regional Corrections Center in Duffield, Virginia and met an individual who provided defendant a ride in her car to Kingsport, Tennessee. Within a few months, the defendant and this individual moved in to an apartment located at 407 Woodlyn Road in Johnson City, Tennessee. This individual had a minor female child.
>
> b. On or about June 19, 2014, in the Eastern District of Tennessee and elsewhere, the defendant operated an LG G2 smartphone from a residence located at 407 Woodlyn Road in Johnson City, Tennessee. The smartphone included a digital camera which allowed images to be recorded.
>
> c. On or about June 19, 2014, in the Eastern District of Tennessee, the defendant knowingly took photographs and videos of minors under the age of 18 who were engaged in sexually explicit conduct (including the lewd and lascivious exhibition of the genitals or pubic area of any person) and stored those images on two memory cards installed on his mobile devices. The minor victims included the individual's minor child.
>
> d. On or about June 19, 2014, the defendant knew and had reason to know that such images of sexually explicit conduct were produced using materials which were transported in interstate commerce and which affected interstate commerce.
>
> e. At the time the foregoing visual depictions of minors engaged in sexually explicit conduct were produced, the defendant knew or had reason to know that the depictions were of minors engaged in sexually explicit conduct.
>
> f. Forensic examination of two portable storage media identified a total of 9 videos and 43 still images of child pornography which the defendant produced during times relevant to the indictment.

[Doc. 20, *Plea Agreement,* pg. 2-3]. Mitchell also acknowledged that "[b]ecause [he] was previously convicted of an offense under the laws of the Commonwealth of Virginia relating to sexual abuse, abusive sexual contact involving a minor or ward, the punishment for this offense [was] … [a] mandatory minimum term of imprisonment of twenty-five years up to a maximum of

2

fifty years imprisonment…." [Doc. 20, *Plea Agreement,* pg. 1]. Also as part of his plea, he agreed to waive his right to file a direct appeal with the limited exception in the event the sentence was above the sentencing guideline range as determined by the district court or the statutory mandatory minimum, whichever is greater. [Doc. 20, *Plea Agreement,* pg. 6]. He also agreed not to collaterally attack his sentence pursuant to 28 U.S.C. § 2255 except for claims of ineffective assistance of counsel or prosecutorial misconduct not known to him by the time of the entry of judgment or changes in the law made retroactive.

A Presentence Investigation Report ("PSR") was prepared, calculating the base offense level at 32 [Doc. 23, PSR ¶ 25]. The PSR enhanced his offense level by four levels because "the offense involved a minor who had not attained the age of 12 years…." See U.S.S.G. § 2G2.1(b)(1)(A); [Doc. 23, PSR ¶ 26]. It also applied a two level enhancement because it found "the offense involved the commission of a sexual contact or act." U.S.S.G. § 2G2.1(b)(2)(A). Finally, the PSR applied a two level supervisory enhancement for committing the offense while being in custody of a minor child. U.S.S.G. § 2G2.1(b)(5); [Doc. 23, PSR ¶ 28]. Those adjustments resulted in an offense level of 40, and after reducing three levels for acceptance of responsibility, the PSR calculated Mitchell's total offense level to be 37. The PSR calculated his criminal history as category V, based on 10 criminal history points [Doc. 23, PSR ¶ 48]. Ultimately, the PSR determined that Mitchell faced a statutorily enhanced sentence of 25 years based on his prior Virginia conviction and a guideline range of imprisonment of 324 months to 405 months [Doc. 23, PSR ¶ 68, 69]; see 18 U.S.C. § 2251(e)("Any individual who violates [18 U.S.C. § 2251 who] has one prior conviction … under the laws of any State relating to … sexual abuse, abusive sexual contact involving a minor or ward … shall be … imprisoned for not less than 25 years….").

Mitchell's counsel objected to the PSR applying one criminal history point for one of his prior convictions and for describing his tattoos as indicative of his affiliation with white supremacist groups. [Doc. 24]. Counsel's relationship with Mitchell broke down and counsel requested leave to withdraw, which the Court granted [Doc. 31]. The Court appointed new counsel.

On May 5, 2015, Mitchell wrote a letter to the Court, objecting to the use of his Virginia conviction to enhance his sentence. [Doc. 35]. In his plea, however, he acknowledged that this conviction could be used to enhance his sentence. In his letter, he also objected to the two level enhancement for committing the offense while having supervisory control over the minor child. See U.S.S.G. § 2G2.1(b)(5).

The District Court overruled his objections because he was represented by counsel but directed Mitchell and his new counsel to file with the Court a status report regarding whether he intended to withdraw his plea, whether he intended to object to the two level supervisory enhancement, and whether he intended to continue to pursue his objection to the one-point being added to his criminal history [Doc. 36]. On May 24, 2015, in response to the Court's order, Mitchell, through his counsel, withdrew his objection to the use of the Virginia conviction to enhance his sentence, but advised the Court that he intended to challenge the two level supervisory enhancement under U.S.S.G. § 2G2.1(b)(5) [Doc. 37]. Mitchell personally signed the pleading, and hand wrote on it "objection withdrawn 5/24/15." [Doc. 37, pg. 1].

Mitchell's new counsel then filed a supplemental objection to the PSR, arguing Mitchell did not exercise supervisory control at all over the minor at the time of the offense and the enhancement should not apply [Doc. 38]. The United States elected not to challenge the objection, and as a consequence, U.S. Probation amended the PSR, removing the two level enhancement.

4

This reduced Mitchell's guideline range to restricted range of 300 to 327 months [Doc. 39]. Mitchell then filed a sentencing memorandum, requesting the Court to sentence him to the minimum mandatory 25-year term of imprisonment [Doc. 40, *Sentencing Memorandum*, pg. 4].

At the sentencing hearing, the District Court, once again, inquired as to whether Mitchell had withdrawn his objection to the statutory sentencing enhancement based on his Virginia conviction [Doc. 66, *Transcript,* pg. 2]. Mitchell's counsel advised the Court that he no longer wished to pursue that. The Court then calculated Mitchell's guideline range to be 300 – 327 months, which all parties agreed was the appropriate sentencing guideline range [Doc. 66, *Transcript,* pg. 3]. The District Court, upon reviewing the statutory sentencing factors outlined in 18 U.S.C. § 3553(a), sentenced Mitchell to the statutory minimum of 25-years [Doc. 43, *Judgment*]. The District Court specifically advised Mitchell of his right to appeal pursuant to Fed. R. Crim. P. 32(j) and the time frame in which that right must be exercised. Mitchell did not appeal nor advise the clerk's office he wanted to appeal.

Mitchell met with his counsel the day following sentencing. At the evidentiary hearing on his 2255 motion, Mitchell testified that it was at this meeting that he specifically instructed his attorney to appeal the case and expressed his discontent with the sentence imposed. On cross, Mitchell testified that he had "hastily signed the plea agreement." He also testified that he had lied to the District Court at his change of plea hearing. In fact, Mitchell claimed he is actually innocent of these charges and merely agreed to the Plea Agreement in order to leave Washington County Detention Center.

In contrast to Mitchell's testimony, his counsel testified that after he was appointed, he met with Mitchell numerous times and reviewed the discovery material with him, although he did not watch the videos containing the purported child pornography. He discussed at length with Mitchell

5

about him withdrawing his guilty plea based on the use of his prior conviction being used to enhance his sentence. Counsel testified that Mitchell changed his mind about challenging the use of his prior conviction. Instead, he wanted to proceed with the plea agreement. Counsel specifically testified that Mitchell no longer wanted to challenge the basis of the enhancement. His counsel noted that he raised all objections Mitchell asked him to raise. His counsel testified, quite frankly, that at no time did Mitchell ever advise him that he wanted to appeal or instruct him to file an appeal on his behalf. In fact, Mitchell also did not express any dissatisfaction with the sentence imposed. Counsel testified that they did discuss an appeal, and he advised Mitchell any appeal would likely be unsuccessful given the appellate waiver in his plea agreement. However, he noted that had Mitchell instructed him to appeal, he would have filed a notice of appeal. After this meeting, Mitchell did not send any letters or contact his counsel in anyway regarding an appeal or any other matter.

      The Court finds as a matter of fact that Mitchell's claim that he verbally instructed his counsel to file an appeal to be incredible. The first time any record exists of his apparent desire for an appeal is in his § 2255 motion. He never sent any letters to counsel concerning an appeal or acted in any way that would be consistent with someone who had instructed his counsel to appeal his sentence. Mitchell's testimony is the only thing that supports his allegation. But his testimony is not credited. During that same testimony, Mitchell explicitly told the Court that he knowingly lied during his change of plea hearing to Judge Jordan and now claims he is actually innocent. Given this audacious claim in light of his prior sworn testimony, the Court finds Mitchell's claim that he instructed his counsel to file an appeal to be incredible.

6

## II. ANALYSIS

"[A] lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *United States v. Doyle*, 631 F.3d 815, 817 (6th Cir. 2011) (quoting *Roe v. Flores–Ortega*, 528 U.S. 470, 477 (2000)). To establish a claim of ineffective assistance of counsel, the petitioner must prove that his counsel's performance was deficient and that the deficiency prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The *Strickland* analysis applies to claims that the attorney's deficient performance led to the forfeiture of a direct appeal. *Roe*, 528 U.S. at 483. Prejudice is shown when there is a reasonable probability that, but for counsel's deficient performance, petitioner would have timely appealed. *Id.* at 483-84; *see also Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998) (holding failure to file direct appeal when specifically requested establishes prejudice).

As noted, the Court finds that Mitchell did not instruct his counsel to file an appeal either in writing or verbally. In those instances, "[a]bsent specific instructions to file an appeal, [the Court] ask[s] first "whether the attorney 'consulted' with the defendant about the benefits and drawbacks of bringing an appeal." *Regalado v. United States*, 334 F.3d 520, 525 (6th Cir. 2003). When consultation has occurred, counsel "performs in a professionally unreasonable manner *only* by failing to follow the defendant's express instructions with respect to the appeal.'" *Doyle,* 631 F.3d at 818 (quoting *Flores-Ortega*, 528 U.S. at 478) (emphasis in the original).

In this case, Mitchell's counsel consulted with him about an appeal twice: once when they met after being appointed to the case to determine whether Mitchell wanted to proceed with sentencing with the Plea Agreement in place, and again when they met after the sentencing hearing. They spoke specifically about the benefits and drawbacks of bringing an appeal and whether pursuing an appeal would be beneficial or successful. Moreover, Mitchell, under oath, before the

District Court, testified that he understood the appellate waiver and its effects on his ability to pursue an appeal. At the conclusion of the sentencing hearing, the District Court also advised him that he could file a notice of appeal and that the clerk would prepare one for him if he wanted. Notwithstanding that, Mitchell never instructed his counsel or the Clerk's Office to file an appeal prior to the date in which an appeal had to be filed.

In *Doyle,* the Sixth Circuit found counsel's performance not unreasonable where the defendant knew of his right to appeal, his counsel had discussed with him the merits of an appeal, and the defendant had not instructed his counsel to file a notice of appeal. *Doyle,* 631 F.3d at 818. Likewise, in *Wright v. United States,* 320 Fed. App'x 421 (6th Cir. 2009), the defendant had signed a plea agreement that contained a broad waiver of the right to appeal his conviction and sentence. Despite the waiver, the defendant would be entitled to relief under § 2255 if the district court determined that there was "an actual request for an appeal." *Id.* at 426. The Sixth Circuit remanded the case to determine whether the defendant "expressly requested that his counsel appeal his sentence and that this request was ignored...." *Id.* at 427. Again in *Campbell v. United States,* 686 F.3d 353 (6th Cir. 2012), the Sixth Circuit held "that even when a defendant waives all or most of his right to appeal, an attorney who fails to file an appeal that a criminal defendant explicitly requests has, as a matter of law, provided ineffective assistance of counsel that entitles the defendant to relief in the form of a delayed appeal." *Id.* at 360.

In this case, the Court finds that Mitchell did not make an explicit request for his counsel to appeal this matter. The Court finds that his claim that he specifically instructed his counsel to appeal verbally on the day after sentencing to be incredible. No evidence was provided to show that Mitchell contacted counsel in any way or was under the impression that an appeal would be filed. The only basis for his claim is Mitchell's own testimony, who also openly admitted to having

8

a history of lying to the Court while under oath. To demonstrate prejudice, the defendant must show that but for the deficient conduct of counsel, he would have appealed. *Id*. He has made no such showing. In fact, the evidence was just the opposite. Counsel met with Mitchell after sentencing and discussed the possibility of an appeal with him. Although counsel advised him that an appeal would likely be frivolous, no reason exists to doubt that counsel would have filed a notice of appeal if he had been instructed as such.

## III.     RECOMMENDATION

Counsel consulted with Mitchell about the merits of appealing his sentence. Mitchell was aware of his right to appeal and did not, at any point, explicitly instruct, whether in writing or verbally, his counsel to file a notice of appeal. He has neither claimed that he would have appealed if he had been consulted nor has he identified any issue, meritorious or not, that he would have appealed had he had the opportunity.[1] Accordingly, the Court RECOMMENDS that Mitchell's § 2255 claim that his counsel was ineffective for failing to file an appeal be DENIED.[2]

Respectfully Submitted,

s/Clifton L. Corker
United States Magistrate Judge

---

[1] The Court notes that Mitchell is not under any duty to show nonfrivolous grounds to appeal in order to demonstrate prejudice. As the Supreme Court noted in *Flores-Ortega,* "although showing nonfrivolous grounds for appeal may give weight to the contention that the defendant would have appealed, a defendant's inability to 'specify the points he would raise were his right to appeal reinstated,' will not foreclose the possibility that he can satisfy the prejudice requirement where there are other substantial reasons to believe that he would have appealed." *Flores-Ortega*, 528 U.S. at 486.

[2] Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived. 28 U.S.C. § 636(b)(1).